Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Lisa C. Cartier Giroux
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAY 2 8 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

DERRICK DEAN MARTIN,

Defendant.

Case No.: 2:24-CR-00149-MKD

Plea Agreement Pursuant to Federal
Rule of Criminal Procedure
11(c)(1)(C)

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney the Eastern District of Washington, and Lisa C. Cartier Giroux, Assistant United States Attorney for the Eastern District of Washington, and Defendant Derrick Dean Martin ("Defendant"), both individually and by and through Defendant's counsel, Douglas Dwight Phelps, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 1 of the Superseding Indictment filed on May 7, 2025, which charges Defendant with Unlawful Receipt or Possession of Unregistered Firearms, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, a Class C felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

a. a term of imprisonment of not more than 10 years;

b. a term of supervised release of not more than 3 years;

c. a fine of up to $250,000; and

d. a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

PLEA AGREEMENT - 2

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea unless otherwise allowed under this Plea Agreement.

4. Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. Rule 11 Nature of the Plea Agreement

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the United States will make a sentencing recommendation of no greater than 37 months imprisonment and Defendant will recommend a sentence of no less than 24 months imprisonment. The United States and Defendant agree to make those sentencing recommendations to the Court. Although the United States and Defendant agree to

PLEA AGREEMENT - 4

make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 37[1] months or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 24 months or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or length or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for

---

[1] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 5

Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

7. Admissibility of Facts and Prior Statements

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 regarding any facts Defendant admits and/or any statements Defendant makes in court.

8. Elements of the Offense

The United States and Defendant agree that to convict Defendant of Unlawful Receipt or Possession of Unregistered Firearms, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, the United States would have to prove the following beyond a reasonable doubt.

    a. *First,* beginning on a date unknown, but no later than on or about April 22, 2024, within the Eastern District of Washington, Defendant knowingly received or possessed firearms, specifically: a short-barreled AR-15-style rifle with black finish, configured with a rifle stock, with no visible serial number, and a barrel of approximately ten inches in length; a

PLEA AGREEMENT - 6

short-barreled AR-15 style rifle with aluminum finish, configured with a rifle stock, with no visible serial number, and a barrel of approximately eleven-and-a-half inches in length; and two silencers with no manufacturer's markings or serial numbers;

    b.    *Second*, Defendant knew that the aforementioned AR-15-style rifles had barrel lengths of less than 16 inches and that the silencers functioned to silence, muffle, or diminish the report of a firearm; and

    c.    *Third*, that the firearms were not registered to Defendant in the National Firearms Registration and Transfer Record.

9.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On or about April 20, 2024, Spokane County Sheriff Office Deputies arrested Defendant for *Unlawful Possession of a Firearm in the Second Degree* after locating a loaded .45 caliber Kimber 1911 underneath the driver's seat of his vehicle during a traffic stop. He was booked into the Spokane County Jail. Defendant was on community supervision after being convicted of *Criminal Mischief While Armed with a Deadly Weapon* under Spokane County Superior Court Case Number 22-1-10081-32 and was subject to a domestic violence

PLEA AGREEMENT - 7

protective order in that same matter prohibiting him from possessing firearms. Defendant bonded out of Spokane County Jail on or before April 21, 2024.

As a result of the arrest, Defendant was directed to report to the Department of Corrections (DOC) on April 22, 2024. Defendant reported to his Community Corrections Supervising Officer (CCO) on that date that he had been arrested on or about April 20, 2024, for a firearm located in his vehicle[2]. Defendant also made admissions to the use of controlled substances before coming to DOC. Defendant's CCO authorized a search of the car that Defendant drove to the DOC office. Inside Defendant's car, a small bag of suspected methamphetamine was found in the center console of the car. Defendant was placed under arrest and booked back into Spokane County Jail for violating the conditions of his supervision. DOC sought and was granted approval to search for additional evidence of violations pertaining to the use of controlled substances and firearms at Defendant's residence.

During the search of Defendant's residence on April 22, 2024, CCOs located a short-barreled AR-15-style rifle with black finish, configured with a rifle stock, with no visible serial number, and a barrel of approximately ten inches in length with a silencer attached, and a short-barreled AR-15-style rifle with aluminum finish, configured with a rifle stock, with no visible serial number, and a barrel of approximately eleven-and-a-half inches in length with a silencer attached. The two silencers had no manufacturer's markings or serial numbers. The firearms were located under Defendant's bed. The silencers attached to the rifles depicted below are circled in red:

---

[2] Defendant went to trial on this matter and was acquitted in state court in Spokane County Superior Court Case No. 24-1-01031-32. At trial, Defendant's mother testified that the firearm belonged to her.

PLEA AGREEMENT - 8



Over 800 rounds of miscellaneous ammunition were also located during the search as well as small amounts of methamphetamine and smoking paraphernalia consistent with drug use.

In a recorded jail call between Defendant and his mother, Defendant admitted possession of firearms, asking his mother to check in his bed and under the coffee table for firearms he believed DOC missed during the search:

```
MOTHER:  Under the coffee table?
MARTIN:  Yeah.
MOTHER:  I will take a look. You had a bunch of my guns I didn't
         realize you'd had.
MARTIN:  No, those are my guns.
MOTHER:  All of them?
MARTIN:  All of them yes.
MOTHER:  Jeff said you had some of mine.
MARTIN:  No. I don't have any of yours, my guns are mine, the
         ones I paid for.
```

On May 6, 2024, Alcohol, Tobacco, Firearms, and Explosives Special Agent interviewed Defendant's mother. The interview was video recorded. Defendant's mother said Defendant had guns at the house, but some could be hers because Defendant would borrow them from her, and she was not good at taking them back. She stated that she knows he is not allowed to possess them but that he has a "fetish" for guns and it's just a "hobby" and they are like "toys to him." She further stated that Defendant was a "fiddler" who liked to take things apart to fix or change them. She further stated that Defendant had a few put together that "looked like AR-15s" or "AK-47s" that were located during a DOC search. She stated that

PLEA AGREEMENT - 9

DOC officers were talking about the guns having silencers which Defendant liked to build. She stated that Defendant would not sell or use them. He just wanted to see if he could build them.

A federal search warrant was granted for Defendant's phone. On Defendant's phone were multiple photos of firearms to include an AR-style rifle consistent with one of the rifles found under Defendant's bed. The background of the photograph shows the rifle on green carpeting that matches in color and texture the carpeting in Defendant's home captured in photos taken during the execution of the search warrant of Defendant's home:



Defendant stipulates and agrees that the two AR-style rifles located by DOC and the two silencers attached to the rifles were not registered to him in the National Firearms Registration and Transfer Record and that he does not have a Federal Firearms License.

All the foregoing events occurred in the Eastern District of Washington.

10.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Counts 2 and 3 of the Superseding Indictment.

The United States Attorney's Office for the Eastern District of Washington further agrees not to bring additional charges against Defendant based on

PLEA AGREEMENT - 10

information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Superseding Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing. This includes not to seeking an indictment against Defendant for the firearm charged in Spokane County Superior Court Case No. 24-1-01031-32 found on April 20, 2024.

11. <u>United States Sentencing Guidelines Calculations</u>

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a. *Base Offense Level*

The United States and the Defendant agree that the base offense level is 20. U.S.S.G. §2K2.1(4)(B)(i)(II) and (ii)(I).

b. *Special Offense Characteristics*

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the offense involved four firearms. U.S.S.G. §2K2.1(b)(1)(A).

c. *Acceptance of Responsibility*

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i.      accepts this Plea Agreement;

    ii.     enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

PLEA AGREEMENT - 11

iv. provides complete and accurate information during the sentencing process; and

v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d. *Agreements Regarding Representations to the Court*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

PLEA AGREEMENT - 12

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or

PLEA AGREEMENT - 13

departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e. *No Other Agreements*

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

f. *Criminal History*

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

12. Supervised Release

The United States and Defendant will jointly recommend 3 years of supervised release to follow. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

PLEA AGREEMENT - 14

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13.   Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14.   Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 15

15. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement. Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement. Defendant expressly waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

PLEA AGREEMENT - 16

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b. The United States may prosecute Defendant on all available charges;

    c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate

PLEA AGREEMENT - 17

charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19.  Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____     5-28-2025
Lisa C. Cartier Giroux                      _____
Assistant United States Attorney            Date

I have read this Plea Agreement, and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney.  I understand the

PLEA AGREEMENT - 18

terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     5/17/2025
Derrick Dean Martin                          Date
Defendant


     I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     5/17/2025
Douglas Dwight Phelps                        Date
Attorney for Defendant

PLEA AGREEMENT - 19